KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **GREGORY CORTEZ,** Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**BLACKSTONE LABS, LLC,**<br><br>Defendant. | Case No.:  3:20-cv-05364<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**1) CONSUMER PROTECTION ACT, RCW 19.86 *ET SEQ*;**<br>**2) NEGLIGENT MISREPRESENTATION; AND**<br>**3) INTENTIONAL MISREPRESENTATION.**<br><br>**[JURY TRIAL DEMANDED]** |

## INTRODUCTION

1.  Plaintiff Gregory Cortez ("Mr. Cortez" or "Plaintiff") brings this Class Action Complaint to challenge the deceptive advertising and business practices of defendant, Blackstone Labs, LLC ("Blackstone" or "Defendant") with regard to Defendant's false and misleading promotion of its purportedly consumable "dietary supplement" product. Based on such false and misleading advertisements, Plaintiff and others similarly situated purchased Defendant's mislabeled product.

2.  Plaintiff purchased a product manufactured and labeled by Defendant, which Defendant advertised as being a dietary supplement that is safe for human consumption. Specifically, Plaintiff purchased the pre-workout formulation product known as Dust Extreme (the "Product").

3.  The Product contains 1,3-dimethylamylamine ("DMAA"). The Food and Drug Administration's ("FDA") has warned that "dietary supplements" containing the ingredient DMAA are not in fact dietary supplements, but instead considered unapproved drugs containing dangerous food additive.

4.  Consequently, Defendant does not comply with federal and parallel state regulations. Defendant's labeling misleads consumers into believing its Product is a dietary supplement safe for human consumption. These misrepresentations are not only harmful to consumers, but also allow Defendant to increase its sales and capture market shares from its competitors.

5.  Plaintiff makes these allegations as follows upon personal knowledge as to Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

6.  Defendant's nationwide sale and advertising of the deceptively misbranded Product constitutes violations of: (1) Washington's Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; (2) Washington's False Advertising Law ("FAL"), RCW 9.04, *et seq.*; (4) negligent misrepresentation; and (5) intentional misrepresentation.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

7. This conduct caused Plaintiff and others similarly situated damages and requires restitution and injunctive relief to remedy and prevent further harm.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA) because the amount in controversy in this matter exceeds $5,000,000.00[1] as to all putative Class members, inclusive of attorneys' fees and costs, and injunctive relief. *See* 28 U.S.C. § 1332(d).

10. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a resident and citizen of the State of California, and Defendant is a corporation organized and existing under the laws of the State of Florida.

11. This Court has personal jurisdiction over Defendant because Defendant conducts business in the County of Kitsap County. Therefore, Defendant has sufficient minimum contacts with this state, and otherwise purposely avails itself of the markets in this state through the promotion, sale, and marketing of the Product in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. This Court has specific personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum. Specifically, Defendant knowingly directed the Product through the stream of commerce into this district. Defendants have advertised and marketed within this district, through wires, mail, and via e-commerce websites through which residents

---

[1] On information and belief, Defendant sells its Product online throughout California. Based upon the advertised price of Defendant's Product and their statewide availability, Plaintiff are informed, believe, and thereon allege the class damages exceed the $5,000,000 threshold as set by 28 U.S.C. § 1332(d).

**3**

| CLASS ACTION COMPLAINT | *Cortez v. Blackstone Labs, LLC* |

of this state and district can purchase the Product. Defendant knowingly direct electronic activity into this state and district with the intent to engage in business interactions and have in fact engaged in such interactions. Defendant sold the Product to consumers in this district, including to Plaintiff, who purchased the Products in this district and whose losses were incurred here.

13. Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and, (ii) many of the acts and transactions giving rise to this action occurred in this district because:

   a. Defendant is authorized to conduct business in this district;
   b. Defendant does substantial business within this district;
   c. Defendant is subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and,
   d. Defendant's actions resulting in harm to Plaintiff occurred within this district.

## PARTIES

14. Plaintiff Gregory Cortez is a natural person currently residing in State of California, and, at the time Plaintiff incurred the injury giving rise to this action, Plaintiff was a resident of Kitsap County within the State of Washington.

15. Upon information and belief, Defendant is a corporation that is organized and exists under the laws of the State of Florida, with its principal place of business in Boca Raton, Florida.

16. Defendant manufactures and/or distributes various products, including purportedly consumable consumer packaged goods and purportedly dietary supplements. Defendant conducts extensive business through Internet sales and enjoys wide retail distribution at numerous stores within the United States, including California.

## NATURE OF THE CASE

17. At all times relevant, Defendant made and continues to make affirmative misrepresentations regarding the Product, which it manufactures, markets, and sells online through its own website and other retailers.

18. Defendant advertised, marketed, packaged, and sold the Product to Plaintiff and other consumers similarly situated in the United States with the false representation that the Product containing DMAA was a "dietary supplement" suitable for human consumption.

19. DMAA was originally developed to be used in nasal decongestant. However, in recent years, it had been discovered that consuming this ingredient could act as a central nervous stimulant that increases the uptake of dopamine and noradrenaline.

20. DMAA produced dose-dependent locomotor depression and fully substituted for cocaine and partially substituted for methamphetamine. The cocaine- and methamphetamine-like discriminative stimulus effects and the conditioned place preference produced by DMAA suggest that is has potential for abuse.

21. Defendant has many products that it advertises, markets, and sells that contain the ingredient DMAA. The FDA has determined that this ingredient does not meet the standard to qualify as a consumable ingredient, and so cannot be labeled as a dietary supplement.[2]

22. The FDA specifically considers DMAA unsafe for human consumption and unsafe if placed in dietary supplements.

23. Since 2012, the FDA has made tremendous efforts to prevent the sale of products containing DMAA on the open market, including sending warning letters to several companies informing them of their violations and demanding that they cease manufacturing DMAA products immediately.

---

[2] *See* DMAA in Products Marketed as Dietary Supplements, Food and Drug Administration (August 2018), https://www.fda.gov/food/dietary-supplement-products-ingredients/dmaa-products-marketed-dietary-supplements.

**CLASS ACTION COMPLAINT** *Cortez v. Blackstone Labs, LLC*

24. The misrepresentations that Defendant made regarding the ingredient DMAA in the Product caused the Plaintiff and similarly situated California consumers to purchase and ingest substances that the FDA considers unsafe for human consumption.

25. Moreover, these false claims about the Product allows Defendant to gain a market share of the food industry through misleading practices, give it an unfair advantage over its competitors.

26. In short, the FDA has banned the inclusion of the ingredient DMAA in dietary supplements. Despite this, Defendant continues to include this ingredient in the Product that it sells on the open market.

27. Defendant's conduct as alleged herein violates several of Washington's laws, as more fully set forth herein.

## FACTUAL ALLEGATIONS

28. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

29. On or about October 30, 2017, Plaintiff purchased Defendant's Product from an online retailer for a total amount of $39.00 pre-tax. One of the ingredients included in the Product was DMAA.

30. Defendant manufactures, markets, and sells the Product online through its own website and through other online retailers.

31. On its label and related advertising materials, Defendant advertises the Product as being a dietary supplement by placing "Supplement Facts" on the label.

32. Similarly, Defendant advertises the product as being safe for human consumption by instructing consumers that the Product is to be ingested orally after being mixed with water.

33. At the time Plaintiff purchased Defendant's Product, Plaintiff believed and relied upon the representations made on Defendant's Product's label and

**CLASS ACTION COMPLAINT** *Cortez v. Blackstone Labs, LLC*

packaging that the Product was a "Supplement" that could be orally consumed daily. Plaintiff reasonably believed that the Product was safe to ingest.

34. On information and belief, Defendant's Product's label, packaging, and advertising materials are prepared and/or approved by Defendant and/or its agents.

35. As mentioned in detail above, Defendant's Product contains unsafe food additives that can cause serious cardiovascular and neurological problems.

36. Consequently, Defendant's Product is neither a "Supplement" nor safe for human consumption more generally.

37. Defendant knew, or in the exercise of reasonable care, should have known that its Product's label and advertising materials were misleading or false.

38. As a consequence of Defendant's unfair and deceptive advertising and manufacturing practices, Plaintiff and other consumers similarly situated purchased and overpaid for Defendant's Product under the false impression that the Product was a dietary supplement.

39. Plaintiff and other consumers similarly situated in the United States purchased and overpaid for Defendant's Product under the false impression that the Product would provide the advertised health benefits associated with the use of the product; however, the as it contained an unsafe food additive.

40. Had Plaintiff been aware that the Product contained an unsafe food additive that posed serious health risks, Plaintiff would have paid less for it, or would have purchased an entirely different product. In other words, Plaintiff would not have purchased Defendant's Product but for the representations on the Product's label and related advertising.

41. Plaintiff and others similarly situated were exposed to and relied upon the same material misrepresentations made on Defendant's Product's labels and website, where Defendant sold, and currently sells, its Product to consumers throughout the United States.

7
**CLASS ACTION COMPLAINT** *Cortez v. Blackstone Labs, LLC*

42. As a result of Defendant's false and misleading statements and failure to disclose, Plaintiff and others similarly situated consumers purchased thousands, if not tens or hundreds of thousands, of units of Defendant's Product, and have suffered, and continue to suffer, injury in fact through the loss of money and/or property.

43. Included within the demands of this Complaint are any other products manufactured by Defendant, which contain DMAA.

44. This action seeks, among other things, equitable and injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

45. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. Plaintiff brings this action collectively and on behalf of all others similarly situated against Defendant, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).

47. Subject to additional information obtained through further investigation and/or discovery, the proposed class (the "Class") consists of:

> All persons within the United States who purchased a product, from Defendant, irrespective of brand name, containing the ingredient DMAA within the four years prior to the filing of this Complaint.

48. Excluded from the Class is Defendant and any of its officers, directors, and employees, or anyone who purchased Defendant's Product for the purpose of resale. Plaintiff reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

49. The "Class Period" means four years prior to the filing of the Complaint in this action.

CLASS ACTION COMPLAINT — *Cortez v. Blackstone Labs, LLC*

50. **Ascertainability**. The members of the Class are readily ascertainable from Defendant's records and/or Defendant's agent's records of retail and online sales, as well as through public notice.

51. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the Product is online through numerous other third-party retailer sites, with hundreds of customer reviews, and on that basis, Plaintiff alleges that the putative Class consists of hundreds, if not thousands of members.

52. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on the same standardized marketing, advertisements and promotions. The common legal and factual questions include, but are not limited to, the following:

    a. Whether the Product as manufactured contained DMAA;

    b. Whether the Product was actually advertised as being a "Supplement" that is for human consumption, when in fact it is not a "Supplement";

    c. Whether the Product was safe for human consumption given it ingredients;

    d. Whether Defendant's claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

    e. Whether Defendant's conduct violates Washington's Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*;

    f. Whether Defendant's conduct violates Washington's False Advertising Law ("FAL"), RCW 9.04, *et seq.*;

    g. Whether Defendant's conduct amounts to negligent misrepresentation;

**CLASS ACTION COMPLAINT**  *Cortez v. Blackstone Labs, LLC*

h. Whether Defendant's conduct amounts to intentional misrepresentation;
i. Whether Defendant acted negligently or intentionally in making the misrepresentations contained on the Product's label and Defendant's website;
j. Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to the Plaintiff and members of the Class;
k. Whether the Plaintiff and the putative Class members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and
l. Whether the Plaintiff and the putative Class members are entitled to injunctive relief as sought herein.

53. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that the Plaintiff is a member of the Class that the Plaintiff seeks to represent. Similar to members of the putative Class, Plaintiff purchased the Product from Defendant after exposure to the same material misrepresentations appearing on the Product's label. Plaintiff also received a Product that was not a dietary supplement and contained dangerous food additives (DMAA). Plaintiff is advancing the same claims and legal theories on behalf of themselves and all absent members of the Class. Defendant has no defenses unique to the Plaintiff.

54. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the putative Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions, and specifically, false and deceptive advertising. Plaintiff has no adverse or antagonistic interest to those in the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and proposed Class.

55. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation of the complex legal and factual issues of such a case increases the delay and expense to all parties, including the court. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).

56. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to, or allow its resellers to, advertise, market, promote, and sell the Class Product in an unlawful and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under Washington law.

57. Further, Defendant has acted or refused to act on grounds that are generally applicable to the class so that declaratory and injunctive relief is

**CLASS ACTION COMPLAINT** *Cortez v. Blackstone Labs, LLC*

appropriate to the Class as a whole, making class certification appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

## FIRST CAUSE OF ACTION FOR
## VIOLATIONS OF THE WASHINGTON'S CONSUMER PROTECTION ACT
## RCW 19.86, *ET SEQ.*

58. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. Defendant's sale of the Product, and those substantially similar products containing DMAA, constitutes "Trade" and "commerce" as defined by RCW 19.86.010.

60. Defendant's intentional misrepresentations as described above constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

61. As a result of each and every violation of the CPA, Plaintiff and the putative class are entitled to any actual damages, costs, and attorneys' fees pursuant to RCW 19.86.090.

62. Plaintiff is further requesting the Court award treble damages pursuant to RCW 19.86.090 due to the reprehensible nature of Defendant's conduct.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

63. Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

64. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant represented to Plaintiff and others similarly situated, through product packaging and advertising materials, that Defendant's Product contained ingredients suitable for human consumption and the Product was a dietary supplement, all of which were material facts.

65. Defendant made these representations knowing, or having reason to know, that its Product contained an ingredient that the FDA had publicly and

CLASS ACTION COMPLAINT *Cortez v. Blackstone Labs, LLC*

specifically identified as unsuitable for human consumption and should not be included in products labeled as "dietary supplements".

66. Defendant acted with the intent to induce the public, including Plaintiff and putative Class members, to purchase Defendant's Product.

67. Plaintiff and the putative Class members saw, believed, and justifiably relied upon Defendant's representations in making the decision to purchase Defendant's Product.

68. At all times relevant, Defendant knew or should have known that such representations were untrue, and Defendant had no reasonable basis for believing the representations to be true.

69. As a proximate result of Defendant's negligent misrepresentations, Plaintiff and other consumers similarly situated were induced to purchase, purchase more of, or pay more for Defendant's Product due to the unlawful acts of Defendant, in an amount to be determined at trial, during the Class Period.

70. As a consequence of this behavior, Plaintiff and the putative class seek compensatory and punitive damages.

### THIRD CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION

71. Plaintiff repeats, re-alleges, and incorporates herein by reference the above allegations as if fully stated herein.

72. Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant intentionally represented to Plaintiff and others similarly situated, through the Product's packaging and advertising materials, that Defendant's Product contained ingredients suitable for human consumption and that its Product was a dietary supplement.

73. Defendant acted intentionally by willfully and purposefully printing a specific "Supplement Facts" label of Defendant's Product indicating to consumers

that the Product was in fact a safe dietary supplement. Moreover, Defendant specifically instructed consumers that the product should be consumed.

74. Because the Product contains DMAA, it cannot be a dietary supplement and in fact the FDA declared the Product was not a dietary supplement because it contained this unsafe food additive. Therefore, the Product does not have the benefits that Defendant advertises.

75. Defendant knew or had reason to know such representations were false, and continued to label its Product in a false or misleading way.

76. Defendant further knew that retailers were advertising its Product as containing ingredients suitable for consumption, because Defendant designed, manufactured, and affixed the product labeling to its Product before supplying the Product to the retailers.

77. Defendant intended that Plaintiff and the putative Class members would rely upon Defendant's misrepresentations.

78. Plaintiff and the putative Class members saw, believed, and relied upon Defendant's representations in making the decision to purchase Defendant's Product.

79. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members were damaged in an amount to be determined at trial.

80. Plaintiff alleges the "who, what, when, where, and how" of the alleged deception by Defendant as follows:

    i. The "who" is Defendant;

    ii. The "what" is the representation that Defendant's Product, and substantially similar products containing DMAA, had ingredients that were suitable for human consumption and were dietary supplements;

    iii. The "when" is the date Plaintiff purchased the Product, and the Class Period of four years prior to the filing of this Complaint;

14

**CLASS ACTION COMPLAINT**      *Cortez v. Blackstone Labs, LLC*

iv. The "where" is in Defendant's product labeling, advertisements, and online marketing; and

v. The "how" is the allegation that Defendant did not disclose that its Product contained unsafe food additives, and thus is unsuitable for human consumption and unsuitable as a dietary supplement.

81. By engaging in the acts described above, Defendant is guilty of malice, oppression, and fraud, and Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and the putative Class members the following relief against Defendant:

- that this action be certified as a Class Action;
- that Plaintiff be appointed as the Class Representatives;
- that Plaintiff's attorneys be appointed as Class Counsel;
- that Defendant's wrongful conduct be adjudged and decreed to violate the consumer protection statutes raised herein;
- An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to restore to the Plaintiff and members of the class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;
- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery were necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;
- that Plaintiff and each of the other members of the Class recover the amounts by which Defendant has been unjustly enriched;

- A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) discontinue its false and/or misleading statement/s; and (ii) undertake an immediate public information campaign to inform members of the proposed class as to their prior practices;
- that Defendant be enjoined from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws;
- Pre-judgment interests from the date of filing of this suit; and
- that Plaintiff and each member of the putative Class recover their costs of suit.

### FIRST CAUSE OF ACTION FOR
### VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT
### RCW 19.86, ET SEQ.

- An award actual damages, costs, and attorneys' fees pursuant to RCW 19.86.090.

### SECOND CAUSE OF ACTION FOR
### NEGLIGENT MISREPRESENTATION

- A judgment against Defendant for general and compensatory damages in an amount to be determined at trial; and
- Punitive damages.

### THIRD CAUSE OF ACTION FOR
### INTENTIONAL MISREPRESENTATION

- A judgment against Defendant for general and compensatory damages in an amount to be determined at trial;
- Punitive damages; and
- that Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

//
//
//
//

CLASS ACTION COMPLAINT *Cortez v. Blackstone Labs, LLC*

## TRIAL BY JURY

82. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury.

Dated: April 16, 2020

Respectfully Submitted,

By: s/ Abbas Kazerounian
Abbas Kazerounian, Esq. (SBN: 48522)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Counsel for Plaintiff and the Putative Class*